IN THEUNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 13-CV-00268 PAB-MJW

PHEBE LASSITER,

Plaintiff,

v.

PINNACLE FINANCIAL GROUP, INC.,

Defendant.

---

**DEFENDANT'S MOTION TO MAINTAIN CONFIDENTIAL DESIGNATION OF INFORMATION AND DOCUMENTS PURSUANT TO THE PROTECTIVE ORDER**
(Doc. No. 16)

---

COMES NOW Defendant, Pinnacle Financial Group, Inc. ("Defendant") by and through its counsel, Adam L. Plotkin, P.C., and submits the following Motion to Maintain Confidential Designation of Information and Documents Pursuant to the Protective Order (Doc. No. 16)(this "Motion"):

**Certificate of Conferral:**

The undersigned certifies that he has conferred with counsel for Plaintiff regarding Defendant's designation of certain documents as "confidential." Plaintiff objected to the confidential designations made by Defendant in an email dated April 1, 2013. The undersigned conferred with Plaintiff's attorney on April 15, 2013, regarding this Motion, and Plaintiff's attorney indicated this Motion is opposed.

**I.    BACKGROUND**

Plaintiff's Complaint alleges violations of the Fair Debt Collection Practices Act, 15

U.S.C. § 1692, *et seq.* See, Doc. No. 1. The Court entered a Protective Order on April 1, 2013. See, Doc. No. 16. Pursuant to the Protective Order, the parties may designate certain information as "confidential." Id., ¶ 1. The Protective Order protects the dissemination of information designated as "confidential." Id., ¶ 3. A party may object to the designation of items as "confidential," and if the parties cannot resolve the objection within ten (10) business days after an objection is received, the designating party is to file a motion with the Court for a determination as to whether the information or documents should be subject to the Protective Order. Id., ¶ 9. The party filing the motion must demonstrate "good cause" for treating the information as "confidential." Id.

Defendant served its Initial Disclosures pursuant to Fed.R.Civ.P. 26(a)(1)("Initial Disclosures) on March 29, 2013. In the Initial Disclosures, Defendant provided documentation specific to its business in the form of Account Notes, Insurance Agreement, Training Materials and Collection Documents. Id. Defendant designated the documents (Bates-Stamp Nos. Lassiter_PFG000001 – Lassiter_PFG000010; Lassiter_PFG000013 - Lassiter_PFG000085; Lassiter_PFG000086 - Lassiter_PFG000128; Lassiter_PFG000140 - Lassiter_PFG000644; Lassiter_PFG000693 - Lassiter_PFG000739 which are not attached) as "confidential."

On April 1, 2013, Plaintiff's counsel wrote an email to the undersigned stating his objection to the Defendant's designation of the information identified above and the insurance agreement as "confidential." Defendant agrees that Lassiter_PFG000129 - Lassiter_PFG000139; Lassiter_PFG000645 - Lassiter_PFG000690; and Lassiter_PFG000691 - Lassiter_PFG000692 are not "confidential" and will remove the label.

As set forth below, Defendant submits that Defendant's designation of its business specific information, as well as the insurance agreement was entirely appropriate and submits

that good cause exists to maintain the confidential designation with respect to these documents.

## II.  ARGUMENT

By way of background, Defendant is in the business of debt collection, an industry that is not highly liked by the general population and extremely competitive. Defendant's employees work on hundreds of collection accounts per week and often speak to hundreds of consumers on a weekly basis. Each company spends substantial time and money developing policies and procedures to train its employees to comply with federal and state law.

The *discoverability* of alleged confidential information is generally subject to the "balancing test" articulated in Martinelli v. Denver Dist. Court, 199 Colo. 163, 612 P.2d 1083, 1091 (Colo. 1980). In applying the Martinelli test, the court is to consider: "(1) if the party asserting the right has a legitimate expectation of privacy, (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner." Estate of Rice v. City and County of Denver, 2008 U.S. Dist. LEXIS 42381, *18-19 (D. Colo. May 27, 2008)(quoting Denver Policemen's Protective Ass'n v. Lichtenstein, 660 F. 2d 432, 435 (10th Cir. 1981)).

It is important to bear in mind that Defendant is not contesting the discoverability of the information (as was the issue in Estate of Rice), but rather is simply arguing that the information should be subject to the Protective Order such that Plaintiff's counsel may not freely disseminate the information. Defendant has already produced the information to Plaintiff and merely asks that in a highly competitive industry Plaintiff not be allowed to distribute this information to anyone she chooses. Defendant submits that it has a reasonable expectation of privacy with respect to their policies and procedures and the training given to its employees. Defendant has provided Plaintiff with its Employee Manual and materials related to its weeklong training

program including power point presentation.  Defendant has incurred substantial time and resources developing these policies and procedures over years.  See, Affidavit of Sue Corgi, attached hereto as **Exhibit A**.  Defendant understands that Plaintiff's counsel *may* need Defendant's confidential information for purposes of preparing her case.  However, it is extremely difficult to believe that Plaintiff's counsel's preparation would require him to share Defendant's confidential information with other individuals.  Defendant submits that disclosing this information pursuant to the Protective Order is the "least intrusive" method of disclosing this confidential information in accordance with the Martinelli decision.

The Tenth Circuit has also addressed the standard in determining whether a trade secret exists:

> Factors considered in determining whether a trade secret exists include: (1) the extent to which information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

See, Hertz v. Luzenac Group, 576 F.3d 1103, 1108 (10th Cir. 2009).

Defendant's confidential information is comprised of documents used by Defendant to train its employees in collection of debts and compliance with state and federal law.  The material is generally known throughout the industry, but the documents are not simply a recitation of law but include a company specific mode of training and educating.  See, **Exhibit A**.  The documents have been created based upon executive interpretation and compliance.

The materials provided include power point presentations developed by Defendant as substantial costs.  Defendant estimates its costs of these materials to be at least $80,000.00.  Id.

The materials in question reveal business strategies and disclose employee bonus and compensation and their dissemination would jeopardize any competitive advantage received by the documents creation. Id.

The materials are also stringently protected. Employees of Defendant are given copies of the materials with specific instructions they are not to leave the premises and must be returned upon the employee's departure from Defendant. Id. Likewise, employees are not permitted to make copies of the documents or provide them to anyone not an employee of Defendant.

With respect to Defendant's designation of the insurance agreement as confidential, again, the issue is not disclosure, but rather, Plaintiff's counsel's desire to share the insurance agreement as he sees fit. The agreement contains confidential information, and even information which may arguably constitute trade secret information. Pursuant to the Colorado Uniform Trade Secrets Act, C.R.S. § 7-74-101, *et seq.*, a "trade secret" includes "confidential business or financial information, listing of names, addresses, or telephone numbers, or other information relating to any business or profession which is secret and of value." C.R.S. § 7-74-102 (4). Information may constitute a trade secret "notwithstanding the fact that some of its components are well-known. Harvey Barnett, Inc. v. Shidler, 388 F.3d 1125, 1129 (10th Cir. 2003 )(citations omitted). Defendant's agreement with its insurance carrier contains not only the liability limits and retention amount, but also includes the premium amount paid by the Defendant, and various terms and conditions which is the work product of the insurance carrier. In a highly competitive insurance market, it is not inconceivable that the dissemination of this information may be detrimental to the insurance carrier's business.

The entire purpose of allowing inspection of the insurance agreement is to "enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and

litigation strategy are based on knowledge and not speculation." Rule 26 Cmt. (1970). Plaintiff's counsel has all the information he needs to assess his case in light of the insurance obligations. Defendant fails to see why Plaintiff's counsel would possibly need to disseminate Defendant's agreement with its insurance carrier. There is no conceivable good-faith basis for Plaintiff's counsel to share the insurance agreement provided to Plaintiff's counsel in this case with others. Given the potential risk to the insurance carrier in Plaintiff's counsel freely disseminating its pricing and contractual terms with its clients, Defendant submits that maintaining the confidential designation is both reasonable and appropriate.

WHEREFORE, Defendant respectfully requests that the Court allow the created documents used in the training of its employees and its insurance agreement with its insurance carrier to retain their confidential designation pursuant to the Protective Order entered in this case, and for such further relief as the Court deems appropriate.

DATED this 15th day of April, 2013.

Respectfully submitted,
Adam L. Plotkin, P.C.


By: /s/Joseph J. Lico
    Joseph J. Lico, Esq.
    621 Seventeenth Avenue, Suite 1800
    Denver, Colorado 802933
    Telephone: (303) 302-6864
    FAX: (303) 302-6864
    jlico@alp-pc.com
    Attorneys for Defendant

**<u>Certificate of Service</u>**

  I hereby certify that on April 15, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

  larsonlawoffice@gmail.com

            By: <u>/s/Joseph J. Lico</u>_____
               Joseph J. Lico, Esq.