IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00268-PAB-MJW

PHEBE LASSITER,

      Plaintiff,

v.

INTEGRITY SOLUTION SERVICES, INC., a Missouri corporation,
formerly known as Pinnacle Financial Group Incorporated, a Minnesota corporation,

      Defendant.

---

**ORDER**

---

      This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment as to Liability [Docket No. 42] filed by plaintiff Phebe Lassiter.  This case arises out of the efforts of defendant Integrity Solution Services, Inc. to collect a debt owed by plaintiff.  The Court's jurisdiction is based on 28 U.S.C. § 1331.

**I. BACKGROUND**

      The following facts are undisputed unless otherwise indicated.  Plaintiff had an account with Qwest/Centurylink (the "account") that went into default.  Docket No. 42 at 2, ¶¶ 1-2; Docket No. 44 at 2, ¶¶ 1-2.  Plaintiff testified at her deposition that she used the account strictly for personal purposes.  Docket No. 42-2 at 3 (Lassiter dep., at 70, ll.10-25).  Defendant is a debt collector within the meaning of 15 U.S.C. § 1692a(6).  Docket No. 42 at 2, ¶ 4; Docket No. 44 at 2, ¶ 4.  After the account went into default, it was placed with defendant for collection.  Docket No. 42 at 2, ¶ 3; Docket No. 44 at 2,

¶ 3.

On November 14, 2012, plaintiff brought a case in this district regarding defendant's collection efforts on the account.  Docket No. 42 at 2, ¶ 5; Docket No. 44 at 2, ¶ 5; *See* Case No. 12-cv-02992-CMA-MJW.  Plaintiff alleged that defendant violated the FDCPA by telling plaintiff that the account would remain on her credit record until she paid it off and that she could not dispute the account until it was out of collection status.  Case No. 12-cv-02992-CMA-MJW, Complaint [Docket No. 1] at 4, ¶¶ 34, 36.  In the complaint, plaintiff requested "that the Defendant cease all further communication on the Account."  Docket No. 42 at 3, ¶ 8; Docket No. 44 at 2, ¶ 8; Case No. 12-cv-02992-CMA-MJW, Docket No. 1 at 3, ¶ 23.  The complaint was served on defendant on November 14, 2012.  Docket No. 42 at 3, ¶ 9; Docket No. 44 at 2, ¶ 9.

Defendant sent plaintiff a letter dated January 25, 2013 regarding the account, which states, in pertinent part:

Creditor                                        Amt Owed
CENTURYLINK                                      231.74

ENCLOSED IS THE DOCUMENTATION YOU REQUESTED REGARDING YOUR PAST DUE ACCOUNT WITH CENTURYLINK.

WE ASK THAT YOU REVIEW THIS MATTER AND REMIT BALANCE DUE IN ORDER TO CLEAR YOUR ACCOUNT. . . .

THIS LETTER IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR.

Docket No. 42-1.

Plaintiff testified at her deposition that she did not hire attorney David Larson–the attorney representing her in both actions against defendant–to resolve her

2

debt directly with Qwest/Centurylink.  Docket No. 44-2 at 5 (Lassiter dep., at 41, ll.13-18).

Plaintiff brought this case on February 1, 2013, alleging that defendant violated the FDCPA by sending the January 25, 2013 letter.  Docket No. 1.  Plaintiff seeks summary judgment on defendant's liability under the FDCPA and requests a jury trial on the issue of statutory damages.  Docket No. 42 at 12.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. Wright v. Abbott Labs., Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  Faustin v. City & Cnty. of Denver, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  Allen v. Muskogee, 119 F.3d 837, 839 (10th Cir. 1997).

## III.  ANALYSIS

Plaintiff argues that defendant violated the FDCPA by sending the January 25, 2013 letter because, at the time, defendant was aware that plaintiff was represented by counsel on the account and was aware that plaintiff had requested that defendant

cease communicating with her.  Docket No. 42.  Defendant responds that (1) it was not aware that plaintiff's attorney represents her on the account as a whole, as opposed to representing her with respect to a particular dispute related to the account; (2) the January 25, 2013 letter was not an attempt to collect a debt; and (3) any violations on defendant's part were the result of bona fide errors within the meaning of 15 U.S.C. § 1692k(c).  Docket No. 44.

The FDCPA provides that a debt collector "may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address."[1]  15 U.S.C. § 1692c(a)(2).  It further provides that, if a consumer notifies a debt collector that she "wishes the debt collector to cease further communication" with her, the debt collector must comply with respect to the debt in question, except in a limited set of exceptional circumstances.  15 U.S.C. § 1692c(c).  More generally, the FDCPA prohibits using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f (preface).

## A.  Representation on the Underlying Account

Plaintiff contends that the complaint in Case No. 12-cv-02992-CMA-MJW put defendant on notice that plaintiff was represented by counsel with respect to the account, as evidenced by the deposition testimony of defendant's employee, Renee Bogar, and by defendant's stipulation to this fact in the Scheduling Order.  *See* Docket

---

[1]Defendant does not dispute that it is a debt collector within the meaning of the FDCPA.  *See* Docket No. 42 at 2, ¶ 4; Docket No. 44 at 2, ¶ 4.

No. 44-3 at 12-14 (Bogar dep., at 69, l.15 to 88, l.25); Docket No. 18 at 5, ¶ 21 (Undisputed Facts in Scheduling Order) ("As of November 14, 2012 the Defendant was aware that the Plaintiff was represented by an attorney on [her account with Qwest/Centurylink] via the Complaint in Civil Action No. 12-cv-02992-CMA-MJW that was served on the Defendant.").  Defendant argues that it did not receive notice that plaintiff was represented by an attorney with respect to the account, only notice that she was represented by an attorney with respect to a particular dispute.  Docket No. 44 at 4-5.  Defendant relies on plaintiff's deposition testimony that Mr. Larson did not represent her in resolving her debt with Qwest/Centurylink.  Docket No. 44-2 at 5 (Lassiter dep., at 41, ll.13-18).

Defendant cites *Shrestha v. State Credit Adjustment Bureau, Inc.*, 117 F. Supp. 2d 142 (D. Conn. 2000), in which the court held that a debt collector was not on notice that a consumer was represented by an attorney with respect to a particular debt where the attorney wrote a letter to the debt collector requesting the return of certain bank funds, but did not enter an appearance on behalf of plaintiff in an exemption hearing.  The court gave particular weight to the fact that plaintiff stated at the exemption hearing that he was representing himself.  *Id*. at 146.

There is no legal basis for the distinction that defendant seeks to draw in this case.  *Shrestha* is distinguishable from the matter at hand because, in that case, the consumer affirmatively stated in open court that he was representing himself.  *See id*. Here, plaintiff made no such representation to defendant prior to the January 25, 2013 letter.  Likewise, other cases finding lack of notice are distinguishable because they concern multiple debts or the filing of actions that are only minimally related to the

5

debt, such as a bankruptcy petition.  *See, e.g.*, *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991) (no violation of § 1692c(a)(2) where debt collector was aware plaintiff was represented with respect to previous debts, but not with respect to new debts); *Dunning v. Portfolio Recovery Assocs., LLC*, 903 F. Supp. 2d 1362, 1369 (S.D. Fla. 2012) (email from plaintiff's counsel on a Sunday afternoon did not arrive in time to put defendant on notice that plaintiff was represented before a telephone call at 8:30 a.m. the following Monday); *Hubbard v. Nat'l Bond & Collection Assocs., Inc.*, 126 B.R. 422, 427 (D. Del. 1991) ("The fact that a debtor retained an attorney more than a year previously, for the specific task of filling out a bankruptcy petition, does not suggest that the same attorney has been continuously retained to represent the debtor in all matters with her creditors.").

On the contrary, relevant case law indicates that the filing of a lawsuit on behalf of a consumer against a debt collector for collection activity on a particular debt is sufficient to put the debt collector on notice that plaintiff is represented with respect to that debt.  *See, e.g.*, *Dunning*, 903 F. Supp. 2d at 1369 (email from counsel containing a pre-litigation draft complaint referencing only the plaintiff would have been sufficient to put collector on notice, had it arrived in time); *Goins v. JBC & Assocs., P.C.*, 352 F. Supp. 2d 262, 273 (D. Conn. 2005) (2002 lawsuit concerning debt collection activity regarding a particular debt put defendants on notice that plaintiff was represented with respect to that particular debt); Federal Trade Commission, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097, 50,104 (Dec. 13, 1988) ("If a debt collector learns that a consumer is represented by an attorney in connection with

6

the debt, *even if not formally notified of this fact*, the debt collector must contact only the attorney and must not contact the consumer.") (emphasis added).

Moreover, defendant's contention that plaintiff was not represented on the underlying debt because Mr. Larson was not attempting to help her resolve the debt with Qwest/Centurylink is illogical in light of the fact that the debt had been referred to defendant for collection. The only activity taking place with respect to the debt was defendant's effort to collect on it. Thus, by representing plaintiff in a collection dispute with defendant, Mr. Larson was representing her on the underlying debt. This conclusion is supported by the deposition testimony of Ms. Bogar, who characterized the failure to note in plaintiff's file that she was represented by an attorney as an error. *See* Docket No. 44-3 at 13 (Bogar dep., at 70, ll.7-25) ("What happened in this particular situation was that a summons was received by a more unsophisticated employee . . . . [a]nd she didn't put the level of detail in there that someone perhaps at my level . . . would understand").

In sum, it is undisputed that defendant was served with plaintiff's complaint in Case No. 12-cv-02992-CMA-MJW on November 14, 2012 and that the complaint alleged defendant had violated the FDCPA in collecting on the account. Defendant responded to the complaint on December 19, 2012. No. 12-cv-02992-CMA-MJW, Answer [Docket No. 10]. In light of these facts, defendant has not raised a genuine dispute regarding its awareness that plaintiff was represented by counsel on the account.

**B.  Attempt to Collect a Debt**

Plaintiff argues that defendant violated 15 U.S.C. § 1692c(c) by sending plaintiff the January 25, 2013 letter after plaintiff requested that defendant cease all communication.  Docket No. 42 at 10-11.

Defendant argues that the January 25, 2013 letter is not covered by the FDCPA because it was not an attempt to collect a debt, but was instead sent in response to a communication initiated by plaintiff in which she disputed the debt.  Docket No. 44 at 6-7 (citing *Grambart v. Global Payments Check Recovery Servs., Inc.*, 2011 WL 124230, at *2 (D. Minn. Jan. 14, 2011) (letter informing consumer of amount owed and asking him to forward payments to a particular address was not an attempt to collect a debt where letter stated it was sent in response to consumer's "request for a statement of [his] account"); *Boyd v. J.E. Robert Co.*, 2010 WL 5772892, at *13 (E.D.N.Y. Mar. 31, 2010) ("The FDCPA's protections are not triggered by communications initiated by someone other than the debt collector."); *Nichols v. Washington Mut. Bank*, 2007 WL 4198252, at *4 (E.D.N.Y. Nov. 21, 2007) ("the FDCPA was intended to protect consumers from communications initiated by debt collectors, not consumers"); *Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, 2005 WL 2098068, at *2 (N.D.N.Y. Aug. 30, 2005) (a debt collector does not attempt to collect a debt by transferring a consumer's call to the loan counseling department upon consumer's statement that she would like to bring her mortgage current)); *see also Bailey v. Security Nat'l Serv. Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998) (stating that § 1692c only applies to communications "in connection with the collection of any debt.").

8

Defendant argues that the statement "I don't believe I owe that much," made by plaintiff in an October 2012 telephone call with defendant, constituted a request for validation of the debt, which defendant properly provided.  Docket No. 44 at 6. Defendant further argues that, as Ms. Bogar testified, it is company policy to provide debt validation information to consumers who state they are disputing a debt via the form letter that was sent to plaintiff.  *Id*. at 7.  Defendant cites Ms. Bogar's testimony that the letter was sent by the client services department, which does not collect debts. *Id*.  Finally, defendant argues that it is required by law to place a disclaimer on all their communications with consumers indicating that they are trying to collect a debt.  *Id*. at 7-8.

Plaintiff relies on *Trunzo v. Citi Mortgage*, 876 F. Supp. 2d 521, 536 (W.D. Pa. 2012), in which the court rejected *Grambart*'s line of reasoning and held that "[r]esponsive communications from debt collectors can easily be both informational and attempts to collect a debt."  The court held that the use of the disclaimer language specified in § 1692e[2] "demonstrates that the . . . letter was a response to a consumer inquiry as well as a collection attempt" and that the "former does not preclude the latter."  *Id*. at 536-37.  The court also took into account the three months that passed between the consumer's request for information and the debt collector's response, stressing that "the existence of a consumer-initiated request [does not] immunize[] all

---

[2]Under the FDCPA, it is misleading for a debt collector to fail to disclose in an initial written communication with a consumer that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," and in subsequent communications that the "communication is from a debt collector."  15 U.S.C. § 1692e(11).

further communications between debt collector and consumer." *Id*. at 537.

Ms. Bogar's testimony that the letter was sent by the client services department and that it was a standard form letter that defendant sends in conjunction with validation information supports a conclusion that one purpose of the letter was to validate plaintiff's debt.  However, defendant does not set forth its basis for asserting that it was legally obligated to include the disclaimer stating that "[t]his letter is an attempt to collect a debt."  *See* Docket No. 44 at 7-8.  Since defendant does not state that the letter was an initial written communication, § 1692e(11) required only that defendant identify itself as a debt collector.  Nor does defendant argue that it was legally required to ask plaintiff to remit the balance of the account.  Moreover, three months elapsed between the phone call and the letter, undermining the existence of a strong link between the two.  *See Trunzo v. Citi Mortgage*, 876 F. Supp. 2d at 536. The Court finds that, given the inclusion of the full disclaimer and the instruction to "remit balance due in order to clear your account," the letter was, at least in part, an attempt to collect on the account.  *See Trunzo*, 876 F. Supp. 2d at 536; *see also* Docket No. 44-3 at 10 (Bogar dep., at 41, ll.11-20) ("Q. . . . . My question was: Does this letter ask her to pay the balance on the account?  A.  It states 'we request you remit balance due.'  Q.  So it asks her to pay on the account?  A.  It does.").

Thus, there is no genuine dispute of fact that the January 25, 2013 letter was covered by the FDCPA and was sent in violation of 15 U.S.C. § 1692c(c).

### C.  Bona Fide Error Defense

Defendant argues that, even if it did violate the FDCPA, such violations cannot

support a finding of liability because they were the result of bona fide error.  Docket

No. 44 at 9-14.  Plaintiff responds that defendant's evidence of its relevant policies is

too vague to establish this defense.  Docket No. 45 at 6-8.

"The bona fide error defense is an affirmative defense that insulates debt

collectors from liability even when they have violated the FDCPA."  *Johnson v. Riddle*,

443 F.3d 723, 727 (10th Cir. 2006).  It provides that a debt collector may not be held

liable for an FDCPA violation if it "shows by a preponderance of evidence that the

violation was not intentional and resulted from a bona fide error notwithstanding the

maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C.

§ 1692k(c).  "[A]n FDCPA defendant seeking the protection of the bona fide error

defense carries the burden of proving that the violation was (1) unintentional, (2) a

bona fide error, and (3) made despite 'the maintenance of procedures reasonably

adapted to avoid' the violation."  *Johnson v. Riddle*, 305 F.3d 1107, 1121 (10th Cir.

2002).

With respect to the whether it maintains "procedures reasonably adapted to

avoid" the violation at issue in this case, defendant states that "[e]very collector is

trained on inputting new information, such as a dispute or cease and desist, on an

account into the account notes."  Docket No. 44 at 12.  In support of this contention,

defendant offers Ms. Bogar's testimony that employees are able to enter relevant

information into the notes section of an account:

Q.  But did you have a policy and procedure at the defendant to put the
attorney information in the notes section or in the account notes? . . . .

A.  If you called our office and said my name is David Larson, I am calling
today, and I am letting you know that I represent Phebe Lassiter.  Here's my

11

number.  They would have documented that phone call and the content of your discussion, which would include your name and your number in the documentation. . . .

Q.  Right, but I'm saying you didn't have a place up at the top like where you take out the person's address and all that and say contact through their attorney.  You didn't have that?

A.  Correct.

Docket No. 44-3 at 28-29 (Bogar dep., at 258, l.15 to 259, l.13).  Defendant states that it has a policy that its employees are "trained not to communicate with consumers that are represented by an attorney," Docket No. 44 at 12, again citing Ms. Bogar's testimony: "Q.  Okay.  And it is your policy or Integrity's policy that consumers never be sent letters on attorney-represented accounts; is that correct?  A.  Not to the consumer, correct.  I mean, we may send correspondence to the attorney."  Docket No. 44-3 at 27 (Bogar dep., at 254, ll.9-14).  Finally, defendant states that it has a "procedure in place where when a lawsuit is received it must be sent to the office that works the account," but that in this case, plaintiff's complaint was erroneously sent to the wrong office, in violation of that policy, precluding proper updating of the account. Docket No. 44 at 12 (citing Docket No. 44-3 at 17 (Bogar dep., at 117, ll.8-25) ("Q.  Did the defendant have a policy and procedure in place when the first complaint came in to send the complaint to a certain place?  A.  Yes, it needs to be sent to the site where the client's worked out of.").  Defendant has provided examples of its training materials, including slide sets that address the FDCPA regulations at issue.  *See, e.g.*, Docket No. 32-4 at 5, 15-16, 22; Docket No. 32-5 at 51, 53, 57.

Plaintiff argues that defendant's bona fide error defense is based on "self serving, non specific, conclusory" statements and "does not provide sufficient detail

regarding each specific policy and procedure." Docket No. 45 at 6. In addition, plaintiff notes the things that defendant did not do to prevent this type of alleged error. Docket No. 45 at 7 ("The Defendant does not train their employee(s) to read what they receive when the Defendant receives a lawsuit on an account. . . . The Defendant did not have any policies in place to make sure that the person who receives the lawsuit properly notates it. . . . . The Defendant did not have a policy or procedure in place to make sure that Defendant's employee(s) were aware of the fact that the Defendant had changed software systems for its account notes.").

Defendant's assertions regarding the third prong of *Riddle* are not supported by the proffered deposition testimony. Ms. Bogar testified that employees would include information about representation in the notes section of an account, but did not state that employees were trained in how to look for this information or in how to document it. *See* Docket No. 44-3 at 28-29 (Bogar dep., at 258, l.15 to 259, l.13). Nor did she testify that employees are trained in how to extract information from legal documents, such as complaints. Ms. Bogar stated that complaints are supposed to be sent to the office that is working on a particular account, but did not explain any details of the purported policy governing this practice. *See* Docket No. 44-3 at 17 (Bogar dep., at 117, ll.8-25). She answered affirmatively to a question regarding whether employees are trained not to talk to consumers once they are represented by an attorney, but did not provide any detail that would support a conclusion, or raise an issue of fact, about whether such training is reasonably adapted to avoid sending collection letters to represented consumers. *See* Docket No. 44-3 at 27 (Bogar dep., at 254, ll.9-14). It does not appear that defendant had any policies in place to prevent errors from

occurring in migrating their accounts to a new system.

Ms. Bogar's testimony is thus insufficient to support a conclusion that the defendant's policies were "reasonably adapted" to avoid the errors in question.  *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1514 (9th Cir. 1994) (debt collector failed to carry burden of showing violation was a bona fide error where it "provided no indication of any procedure to ensure that all pertinent information would be expeditiously transmitted during a transfer of accounts from one office to another"); *Dragon v. I.C. System, Inc.*, 483 F. Supp. 2d 198, 206 (D. Conn. 2007) ("Defendant has simply failed to proffer evidence of any procedures maintained to avoid subsequent placements of debts already in its system from appearing as 'entirely new debts,' thus permitting collection efforts notwithstanding that the consumer has already notified defendant of his/her representation by an attorney and/or dispute of the claimed debt.").

Defendant's proffered training materials indicate that employees are trained on the general requirements of the FDCPA, but do not demonstrate the existence of the purported internal account-handling policies tailored to avoiding the errors at issue. *See, e.g.*, Docket No. 32-4 at 15-22, 32-6 at 4-6.  Defendant does not identify any specific training materials that would support its argument.  *See* Docket No. 44 at 13.

In sum, defendant has not carried its burden of showing a triable dispute of fact on its affirmative defense.[3]

---

[3]Since defendant has not raised a genuine dispute regarding the third prong of the bona fide error test, the Court need not discuss the first two prongs.

### D.  Statutory Damages

Plaintiff requests a jury trial to determine the amount of statutory damages to be awarded.  Docket No. 42 at 12.

The Seventh and Eleventh Circuits have held that plaintiffs have a right to a jury trial in this context.  *See Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 898 (7th Cir. 1998) ("§ 1692k(a)(2) of the FDCPA provides for trial by jury in determining statutory additional damages"); *Sibley v. Fulton DeKalb Collection Serv.*, 677 F.2d 830, 832 (11th Cir. 1982) ("It has been frequently determined, however, that the word 'court,' used in the [FDCPA] and in the remedial portions of numerous other statutes, encompasses trial by both judge and jury rather than by judge alone.").

The Court finds this authority persuasive.  Trial will proceed, as scheduled, on plaintiff's request for statutory damages.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment as to Liability [Docket No. 42] is GRANTED.


DATED March 18, 2014.

                                        BY THE COURT:


                                         s/Philip A. Brimmer
                                        PHILIP A. BRIMMER
                                        United States District Judge


15